**STATE ex HUBBARD v HILTY et, etc.**

Ohio Appeals, 3rd Dist, Allen Co.

No. 793.   Decided March 4, 1940.

F. W. Durbin, Lima, for relator.
Paul T. Landis, Lima, John H. Davison, Lima, for respondents.

## OPINION

By GUERNSEY, J.

This is an action in mandamus instituted in this court by Elma V. Hubbard, relator, against Homer J. Hilty, Harry L. Burgess and T. R. Morris, as the Board of County Commissioners of Allen County, Ohio, respondents, to compel the respondents to restore the relator to the position of care taker of the ladies waiting room in the Allen County Court House from which she had been removed by respondents.

The cause of action was heard upon the pleadings and the evidence which disclose the following facts concerning which there is but little, if any, dispute, to-wit:

Some years ago following the remodeling of the court house subsequent to the fire of 1929 and after a women's comfort station had been established under the sidewalk adjacent to the court house, an arrangement was made between the then Board of County Commissioners and representatives of the Federated Women's Clubs of Lima, to the effect that a room on the ground floor of the court house should be allocated and devoted by the Commissioners to the purposes of a ladies rest room, and the Federated Clubs should co-operate with the Commissioners in purchasing the necessary furniture and furnishings to equip the room, and the Commissioners' should at the expense of the county employ a woman attendant for the rest room. The length of time this arrangement was to endure was not fixed.

A rest room was accordingly established and furnished and a colored woman was employed by the County Commissioners to perform the duties in connection therewith and with the women's comfort station, subsequently performed by the relator who was employed by the Commissioners to succeed the colored woman in the position in 1933, the position then not being within the protection of the Civil Service laws.

Subsequently the relator was by the Board of County Commissioners of Allen County appointed provisionally as caretaker of the ladies waiting room in the Allen County Court House, upon a non-competitive civil service examination approved by the Civil Service Commission of the State of Ohio, at a salary of forty dollars per month, pursuant to the laws of Ohio relating to civil service, said provisional appointment becoming effective on or about July 1, 1938.

She continued to perform the duties of the position under the provisional appointment from the date thereof until on or about the second day of January, 1940.

All of the duties of said position were performed in and in connection with the ladies rest room on the first floor of the court house and the ladies comfort station under the sidewalk adjacent to the court house.

Certain of the duties of the position occupied by relator were janitorial in character and practically all of such duties were, during relator's tenure, with the knowledge of respondents, performed by another woman employed by relator out of her own means at a wage approximately equivalent to one-fourth of relator's salary; but the balance of the duties, being the major part of the duties of the position, consisted of supervising the rest room and ladies comfort station during the periods of the day the same are open to female members of the public, and attendance at rest room during such periods, and acting as receptionist therein, and ministering to female members of the public requiring such attention.

On the 29th day of December, 1939, the respondents, being then unaware that relator, as a provisional appointee under the Civil Service laws, was within the protection thereof, without formally adopting a resolution to that effect, planned to terminate relator's employment as caretaker of ladies rest room effective at the end of the year 1939, and employ another woman in her place, and orally so notified relator and one of the commissioners then

stated to her in the presence of the other members that her work had been satisfactory and the termination of her employment was on account of her politics.

On December 30, 1939, relator filed her petition in mandamus herein seeking restoration to and reinstatement in the position, and alternative writ of mandamus was issued thereon on January 2, 1940.

At an organization meeting of respondents on January 2, 1940, subsequent to the filing of relator's petition herein, the respondents, instead of proceeding with the plan above mentioned, formally adopted a resolution in writing purporting to abolish the position of relator and prescribe that written notice be given to relator of the abolishment thereof and that her services are no longer required, and which among other things further purported to abolish the two positions of janitor at the court house theretofore established by the Board, and create the following positions: one head day custodian, two night custodians, and to employ the head day custodian at a salary of one hundred dollars per month and the two night custodians at salaries of eighty dollars per month.

Written notice of the abolishment of the position was given to relator as provided in the resolution.

Under the terms of the resolution the combined salaries to be paid the one day custodian and the two night custodians is twenty dollars per month less than the combined salaries previously paid to the two janitors and relator.

Since the adoption of the resolution the duties theretofore performed by the two janitors whose positions had been abolished by the terms thereof, and all of the duties of a janitorial character theretofore performed by relator as duties of her position were transferred to and performed by the custodians employed under the terms of said resolution, and the major part of the duties of the position theretofore occupied by relator, consisting of supervising rest room and ladies comfort station during the periods the same are open to female members of the public, attendance at rest room during such periods and acting as receptionist therein and ministering to female members of the public requiring such attention, theretofore performed by relator, are not performed by any employe or employes of the respondents, and no one is employed by respondents to perform a service substantially identical with that theretofore performed by relator.

The arrangement between the former Board of County Commissioners and the Federated Clubs with reference to the establishment of the rest room and the employment of an attendant therefor, if it reached the dignity of an agreement, had no binding force in law, as a Board of County Commissioners is inhibited by law from making any agreement which has the effect of restraining it or its successors in office from exercising any of the discretionary powers vested in it, or performing any of the duties imposed upon it by law. The power to establish, as well as the power to abolish, positions of the character mentioned, are some of the discretionary powers vested in a Board of County Commissioners which can not be restrained by any agreement. This being the case, the breach of this arrangement, if the abolishment of the position created a breach, notwithstanding no time was fixed for the duration of the arrangement, can not in any way reflect on the good faith of the Board in abolishing the position.

In an action in mandamus the right must be determined from the facts as they exist at the time of trial, so the fact that the respondents at the time this action was commenced had planned to remove the relator from her position and employ another person to fill it in a manner contrary to the provisions of the laws relating to civil service is not determinative of relator's right to the writ sought herein, but such right must be determined from the facts as they existed at the time

of trial, including the adoption of the resolution and other subsequent acts of respondents, and conditions then existing.

In order to warrant the issuance of a peremptory writ of mandamus the relator's right to the relief sought must be clear and the burden of showing such clear right to relief is on the relator.

Under the terms of the resolution there is a re-arrangement of work and a saving of twenty dollars per month in the combined salaries of the custodians employed to perform the services theretofore performed by the two janitors whose positions were abolished and that part of the duties of the position theretofore occupied by relator which were janitorial in their character, so that the abolishment of the position under the terms of the resolution purports to be and presumably is to meet economic and financial requirements.

The respondents are by law vested with the power and discretion to adopt a resolution of the character adopted by them. In adopting the resolution they acted in a legislative capacity. Courts will not inquire into the motives of a legislative body. If a resolution such as this resolution is fair upon its face, as this is, and like this resolution does not violate any provision of law or the constitution, it will be upheld. It suggests nothing but a purpose to meet economic and financial requirements. If the rule were otherwise it would be impossible for a governing board of a county to change, rearrange or redefine the duties of its employes so long as any of them had been appointed to a position in the classified civil service and had a scintilla of work to perform. State ex rel Vorhis v City of Seattle, Supreme Court of Washington, 1913, 133 Pacific, 11 and 12.

The relator, as a provisional appointee under the civil service laws pending a competitive examination for the position held by her, was subject to removal only in the same manner that persons regularly appointed to posi-

tions in the classified service after competition examination.

The civil service laws, however, are not intended to and do not assure to persons coming within them, the continued existence of the positions held by them but only that they shall not be removed from existing positions except in conformity with said laws.

The abolishment of a position in the civil service to meet economic and financial requirements does not give to one so losing a position a right to continue in or to be restored to the position. Curtis v State, 108 Oh St 292; Vansuch, Dir. v State, 112 Oh St 688; Dykstra v State, 42 Oh Ap 141.

Another principle of law well recognized is that the abolition of a position to meet economic and financial requirements must not be predicated upon a mere subterfuge. Where the abolishment is predicated on the meeting of financial and economic requirements the able test applied by the courts to determine whether such abolishment is a subterfuge, is, whether it appears after such purported abolishment, another is employed to perform a substantially identical service, either under the same title or classification, or a different title. If another is so employed the purported abolishment is a subterfuge and the position is not legally abolished and a provisional employe in the classified service removed therefrom is entitled to restoration to the position. On the other hand, if another is not so employed the abolishment is not a subterfuge and the position has been legally abolished and the employe removed therefrom is not entitled to restoration.

It clearly appears from the evidence in this case that the major part of the duties of the position occupied by relator before the abolishment are not now performed by any employe or employes of the respondents and that no one is now employed by respondents to perform a service substantially identical with that theretofore per-

formed by relator, and consequently, applying the test mentioned, the position has been legally abolished and the relator is not entitled to restoration to the position herein, and the peremptory writ of mandamus sought by relator herein will therefore be denied at her costs.

KLINGER, J., concurs.

CROW, PJ., dissenting.

The majority of the court and I are in complete agreement on the law of the case which is that an employe within the protection of the civil service statutes of the state, as was the relator, can not be removed excepting as provided in §485-17a GC, which was not complied with in any particular by the county commissioners; and that a removal of such employe can not be lawfully accomplished by abolishment of the position which abolition is a mere subterfuge or guise.

We also agree that the decisive question in this case namely whether the abolishment of relator's position was a mere substitute or guise, is an issue of fact which "must be determined from the facts" as they existed at the time of the trial, including the adoption of the resolution and other subsequent acts of respondents, and "conditions then existing".

But to those facts there must, in my opinion, be added all other relevant facts existing at any time prior to the trial.

One of those facts is that the result of the attempted abolition of relator's position and fixing the salaries of other positions at the court house and a position at memorial hall which were the two county buildings involved, was a saving of only five dollars a month instead of twenty dollars a month.

I differ from the holding of the majority of the court, that the major portion of relator's duties consisted of personal reception of and ministration to female visitors at the ladies waiting room also called the rest room, in the court house, although such duties were to an appreciable extent important.

However, in this case the ordinary test of abolishment of a position. towit, subsequent performance of substantially all the duties, by other employes, is not applicable because men or a man can not properly perform any of the duties at either the ladies rest room in the court house or the women's comfort station (equipped as each is with toilets for females only), during the hours they are publicly open for female visitors exclusively.

At this stage of culture in the United States it is to be regretted that it becomes necessary to say in a judicial opinion that women's rest rooms and comfort stations when open to the female public only, should not be in charge of male caretakers or attendants.

Where the case presents as does the instant one, the sole question whether the abolishment of a position was in reality only a mere guise or subterfuge to remove an incumbent, neither the recital by the record, of conditions economic or financial nor of other factors, prior or subsequent to the attempted abolition can be conclusively controlling, because control of conditions may be so exercised as to produce abolishment lawful in form but unlawful in fact.

Indeed human ingenuity seems boundless in matters of political finesse where patronage is at stake.

It was not within the power of the county commissioners to in any manner whatsoever remove relator excepting as we have said pursuant to §485-17a, and hence there was no room for the exercise of a different discretion in the matter of removal.

Therefore the "decisive" or "determinative" question is solely whether when the commissioners adopted the order of abolishment their controlling motive or purpose was to separate relator from her position.

Before the order purporting to abolish relator's position was made by the commissioners there were four employes in entire charge of the court house, the rest room in the court house and both the men's and women's comfort stations, namely. two janitors. the caretaker of the men's comfort station,

each of those three persons being a man, and relator, a woman; and since then precisely the same number, four, namely, one day custodian, two night custodians, and the caretaker at the men's comfort station, with the result that relator is ousted from her position, and either the day custodian or one of the two night custodians, placed in a newly created position; the only difference being that where there should be as there has always been throughout many years past, a woman caretaker at the two rest rooms for women during the open hours, there is none at either of the two places, while at the men's comfort station a man remains caretaker as in the long past; and in every feature excepting the presence of a woman caretaker at the ladies waiting room and comfort station, all three places are functioning exactly as they have done continuously ever since they were established.

Otherwise stated the gap in the total work left by the absence of relator, has been filled by supplanting the two janitors with the three custodians.

The speed attending that supplanting is noteworthy, as it occurred the very first full business day after relator's attempted dismissal

December 30, 1939, Saturday, was a half holiday at the court house; the following day was Sunday, the 31st; Monday was a holiday; and all the time from Saturday noon until Tuesday, January 2, 1940, all the offices in the court house were closed to public business.

There is no evidence that the county was in financial distress, and I cannot believe that the county commissioners intended to repudiate the agreement (although it was wanting in legal formality) so long existing and observed, made by their predecessors with the representatives of the local organizations of women, and thereby leave both the ladies waiting room and the women's comfort station to permanently remain open without a woman attendant. To say the least, the agreement constituted a moral obligation, and I would rather think that they honestly believed and acted on the be-

lief that the ever ceaseless changes wrought by time in human impulses would soon furnish forth the opportunity for them to appoint another competent woman to their approval politically.

These definitions are copies from Webster's New International Dictionary Second Edition:

"Guise. A cover or cloak."

"Subterfuge. A device, plan or the like, to which one resorts for escape or concealment; an artifice employed to escape censure or the force of an argument, or to justify opinions or argument; an evasion."

Viewed in that light I am clearly of opinion that all the material circumstances and features of fact of the present case point unerringly to the conclusion that it was the sole motive and purpose of the commissioners when passing the resolution purporting to abolish relator's position, to work her removal, and not to abolish her position.

By the reasoning of the majority opinion, if a woman had been appointed in place of Mrs. Hubbard, the relator, the latter would be now entitled to restoration to her position. It must follow from that reasoning, that if in the future a woman should be appointed while the other facts and circumstances remain as they are, a case thereafter instituted by relator for restoration, would produce that result.

But it is my conclusion upon the existing facts and circumstances she is now certainly entitled to be restored with accrued pay.