STATE, ex rel. CLICK, Relator, v. THORMYER, Acting Director of Department of Highways, Respondents.

Ohio Appeals, Tenth District, Franklin County.

No. 5791. Decided February 11, 1958.

588

Arthur L. Rowe, Columbus, for relator.
William Saxbe, Atty. Genl., Hugh A. Sherer, Chief Counsel, Thomas L. Startzman, Asst. Atty. Genl., Columbus, for respondents.

## OPINION

By BRYANT, J.

This is an action for writ of mandamus begun in this court. Relator, Stephen E. Click, alleges that on June 21, 1957 he was illegally laid off from a position he held in the classified civil service in the State Highway Department.

He alleges that George J. Thormyer, one of the respondents, is Acting Director of the Highway Department, and that Carl W. Smith and Leland S. Dougan are members of the State Civil Service Commission. Click asks that a writ of mandamus be issued requiring respondents to restore him to his position in the Highway Department together with the privileges, prerogatives and emoluments of said position together with the pay which has has lost since the time he lost his position.

Click further alleges that he was first employed in Division No. 9, Roadside Improvements, Maintenance and Repairs, on March 16, 1949 and the following month he was provisionally appointed as a driller's helper in said Department. He further states that in August, 1952 he was given a provisional appointment as a plumber in the said division of the Highway Department and at the same time successfully passed a noncompetitive examination for said position as a result of which he alleges his said position was within the classified civil service of the State of Ohio and he was entitled to all of the protection afforded by the civil service law.

Click alleges he held said position as plumber until June 21, 1957, prior to which he was informed by letter that his said position was abolished "as a matter of economy." Click further alleges that on or about June 22, 1957 Willard Graham began the performance of the duties of a plumber in said Division No. 9, Roadside Improvements, Maintenance and Repairs, and that Graham was hired "to perform the identical duties which prior to June 21, 1957 relator had performed." It is further alleged that on said date "said Willard Graham accepted

said employment and began performing the identical duties of the relator and has performed said duties since said date, * * *."

Click alleges the appointment of said Graham was not made from any eligible list from the State Civil Service Commission and that at no time has there been an eligible list for the position of plumber. He says he has never been given any reason for removal as required by §143.27 R. C.

On behalf of the three respondents a joint answer has been filed admitting the official capacity of each of the three respondents and further admitting the employment of Click in the said Highway Department in the civil service classification and at the times alleged by him, and further admitting that Click had been notified by letter on or about June 18, 1957, that his job was abolished and his services terminated. The answer further admitted the employment of Willard Graham and that Graham was not appointed from an eligible civil service list. The foregoing, being the substance of the first defense, was followed by a general denial.

As a second defense the answer sets forth a job description of plumber with the statement that on or about June 18, 1957 Click was employed in the classified service in that position and that Click's actual duties on or about said date and "for a substantial period prior thereto, were substantially identical with, or within the scope of the foregoing job description, and such actual duties were actually performed by relator during such period."

The second defense continues by alleging the employment of Graham in the classification of mason and alleges that Graham has been performing the duties of a mason since his appointment on July 24, 1957. The answer then alleges a practice in the Department of Highways in case of persons having special skills, when they are not needed for such work, of assigning them to common labor tasks. The answer concludes by alleging there is some overlapping in the duties performed by Graham with those previously performed by Click "but such identity is not substantial and the position of said Graham and that formerly held by relator are not identical either in fact or in law."

Relator filed a reply reaffirming his claim that Willard Graham was not appointed to any position other than that held by Click and alleged that the creation of the title given to Graham "has been merely as a subterfuge in order to remove the relator from his position * * *."

The matter was submitted upon the pleadings just above referred to, the depositions of three witnesses, namely, Click, the relator herein, Edward L. Kessler, Wellston, Ohio, a well driller, employed in roadside improvement work of the Highway Department, Division No. 9, working out of Chillicothe, Ohio and Henry L. Meinert of Chillicothe, Ohio, in charge of the roadside park program in said Division No. 9 and the immediate superior of the said Click, and the briefs and arguments of counsel. The three witnesses above referred to were called by relator. No witnesses were called on behalf of the respondents.

We mention that for the reason that some of the allegations testified to by relator in support of his claim that he was illegally deprived

of his job were undenied in the testimony or otherwise except as they may have been put in issue by general denials in the answer filed by respondents.

Many of the facts in the case are not in dispute or are specifically admitted by the pleadings.

Respondents in their second defense frankly state that Click on June 18, 1957 was employed in the classified service of the State in the classification of plumber. They allege in considerable detail the duties performed by Click and quote the following from the job description of a plumber on file with the State Civil Service Commission:

"Layout, install and repair all types of sanitary drainage;

"Install all types of water and gas lines, together with fixtures;

"Repair boilers and steam lines;

"Install and repair all types of power and hand pumps; and

"Install and repair septic tank and privy vaults."

The foregoing tasks, being a rather detailed description of the duties of plumbers in general, were specifically alleged by respondents herein to be the actual duties performed by Click on June 18, 1957 and for a substantial period prior thereto. We quote the language used in this portion of the answer as follows:

"Relator's actual duties on or about June 18, 1957, and for a substantial period prior thereto, were substantially identical with, or within the scope of the foregoing job description, **and such actual duties were actually performed by relator during such period.**" (Emphasis added.)

This is followed by a detailed job description of a mason and similar allegations as to the duties performed by one Willard Graham (who, relator alleges, was hired illegally to perform the exact duties Click had been performing and was given the title of mason merely as a subterfuge).

Respondents apparently seek to depart from the broad admissions made in their answer to wit, that Click's actual duties were that of a plumber. We note that on page four of their brief they contradict the said admissions in the following statement:

"Obviously the situation in the instant case was that relator was classified as a skilled laborer and was paid the wages of a skilled laborer even though there is no question that he did nothing except unskilled or common labor. As a result, his position was abolished and the skilled laborer's wages were used to hire an urgently needed mason."

It is to be doubted whether in this state of the record respondents can make a specifically detailed admission and afterwards abandon and seek to contradict it.

All parties concerned admitted that this controversy had as a basis a letter dated June 17, 1957 signed by George J. Thormyer, Acting Director, Department of Highways, and addressed to Mr. Stephen E. Click, Coalton, Ohio. The letter in full is as follows:

"June 17, 1957"

"Mr. Stephen E. Click

"Coalton, Ohio

"Dear Sir:

"Please be advised that, as a matter of economy, your position of

Plumber in Division 9 Roadside Improvement M&R., is being abolished, effective July 10, 1957.

"Your last day to report for work is June 21, 1957, as vacation is being paid for June 24, 1957 to July 9, 1957, inclusive.

"Very truly yours,

/s/ George J. Thormyer"

"GEORGE J. THORMYER

ACTING DIRECTOR

DEPARTMENT OF HIGHWAYS"

"GJT.C

 CC.Div.9"

It will be well to bear in mind that this letter raises no question as to the efficiency, capability or morals of relator in performance of his duties.

No charge was filed against him or sought to be filed. Nor does this action by the Acting Director of the Department of Highways seek to reduce him in rank or temporarily lay him off. The meaning intended by the writer of the letter was that Click's job was abolished "as a matter of economy * * * effective July 10, 1957" and that his last day to "work was June 21, 1957."

The writ of mandamus is not available if an appeal or other adequate remedy of law is available. See **State, ex rel. Sidell et al., v. Cole, 147 Oh St 203**, holding that a "member of the fire department may not resort to the extraordinary remedy of a writ of mandamus as a substitute for such right to appeal" where he has been reduced in rank.

As early as 1908, however, it had been decided by the Ohio Supreme Court that mandamus action could be used where the removal was illegal. In **State, ex rel. Moyer, v. Baldwin, 77 Oh St 532**, the first branch of the syllabus is as follows:

"1. Mandamus is the proper remedy to restore a party to the possession of an office from which he has been illegally removed."

In that case the relator was a detective in the Youngstown Police Department and claimed he was illegally removed by the Mayor, which claim was upheld by the Supreme Court.

In the case of **Curtis, et al v. The State, ex rel. Morgan, 108 Oh St 292**, at **page 300**, the court points out that Civil Service Laws permit appeal only in "removal" cases and not in cases of reduction, layoff or suspension. The second branch of the syllabus in the Curtis case is quoted here:

"2. No appeal lies from the action of the appointing authority, except in cases of removal on the grounds set forth in §486-17a GC."

The fourth branch of the syllabus in the Curtis case, supra, is as follows:

"4. The fundamental purpose of civil service laws and rules, is to establish a merit system, whereby selections for appointments in certain branches of the public service may be made upon the basis of demonstrated relative fitness, without regard to political considerations, and to safeguard appointees against unjust charges of misconduct and inefficiency, and from being unjustly discriminated against for religious

or political reasons or affiliations. Those laws and rules may not be invoked by an appointee, where no discrimination is claimed and no charges have been made involving misconduct, inefficiency, or other delinquency."

In the case of the **City of Toledo v. Osborn, 23 Oh Ap 62**, the fourth branch of the syllabus is as follows:

"Employee within classified service who is wrongfully deprived of employment by reason of void and illegal ouster from which there is no appeal under §486-17a GC, may be restored to employment by mandamus."

Cited in support of this are the cases of State, ex rel. Moyer v. Baldwin, supra, **City of Cleveland v. Luttner, 92 Oh St 493, Hornberger v. State, ex rel., 95 Oh St 148, State, ex rel. Brittain v. The Board of Agriculture of Ohio, 95 Oh St 276,** Curtis v. State, ex rel. Morgan, supra, and the State, ex rel. Bay v. Witter, 110 Oh St 216. We conclude that mandamus is proper to test the questions involved in this case.

Turning to the depositions, the first witness was Click, the relator, who in his petition alleged he was "summarily dismissed and removed" from a job and that "said removal was wrongful and illegal." In explanation of his allegations Click, called as a witness on his own behalf, identified the letter of June 17, 1957 from Acting Director Thormyer above set forth and beginning at page six of the depositions, after identifying said letter testified as follows:

"Q. Is this the first time then that you knew that you were no longer going to be with the Department of Highways?"

"A. That is right."

"MR. ROWE: Well, I would like to offer this Relator's Exhibit No. 1 in evidence."

"Q. (By Mr. Rowe) Now—"

"A. Wait a minute; about two weeks before that this guy down here, this Martin—"

"Q. Who is Martin?"

"A. Well, he is a—the one that asked me to resign. I don't know what his classification is but he called me over there and asked me to resign. He said, when I didn't resign, 'I will see you in a couple of weeks,' but he never did see me."

"Q. Who is Mr. Martin?"

"A. Well, he is a—do you know what he is classified as down there?"

"MR. STARTZMAN: Is this Lloyd Martin?"

"THE WITNESS: Yes."

"MR. STARTZMAN: I think he is a personnel man for the Division, I guess. I don't know."

"The WITNESS: Administrative Assistant or something."

"Q. (By Mr. Rowe) Where is Mr. Martin's office?"

"A. Right there in Chillicothe in the Highway."

"Q. In the Highway Building on the Jackson Pike?"

"A. Yes."

"Q. That is on State Route 35 just as you leave Chillicothe?"

"A. Yes, sir."

"Q. Did he call you into his office?"

"Yes, sir."

"Q. And you refused to resign?"

"A. Yes, sir."

"Q. Then it was after that that you received this letter?"

"A. That is right."

"Q. Now, did Mr. Martin, when he asked you to resign, given you any reason for your resignation?"

"A. No. He said there was about forty other fellows wanted my job."

"Q. But he said nothing about the inefficiency or the manner in which you were doing your work?"

"A. No."

The said Lloyd Martin was not called as a witness and we are unable to find any place in the record where there was any challenge as to the truth of the statement by relator that he was asked to resign because "about forty other fellows" wanted Click's job.

It was not disputed that relator had been employed by the Department of Highways in the roadside improvement work for more than eight years and for about five years held a provisional appointment based upon a noncompetitive examination as plumber.

It has been held by the Ohio Supreme Court that in the absence of an eligible civil service list, a civil service employee, provisionally appointed after a noncompetitive examinationtion and upon approval of the Civil Service Commission, becomes an appointee in the classified service. See State, ex rel. Slovensky v. Taylor, 135 Oh St 601, State, ex rel. Lagedrost v. Beightler, 135 Oh St 624, and State, ex rel. Conway v. Taylor, 136 Oh St 174.

The principal question in this case is whether or not the abolishment of the job held by Click as plumber was done in good faith or whether it was a subterfuge by which Click's job could be taken away from him illegally and given to someone else.

On behalf of Click, the evidence shows that the new appointee, Willard Graham, rides the same truck and works under the direction of the same foreman as Click formerly did. Click claimed that from personal observations he had found Graham was performing the identical duties formerly performed by him.

The foreman, Edward L. Kessler, at page thirty-five of the depositions testified as follows:

"Q. Now, you have testified that Graham's work is classified 30 per cent masonry, 50 per cent water well work and 20 per cent tree-setting and seeding; that is about the way you would divide his time?"

"A. Yes."

"Q. Now then, the 50 per cent water well work that he is now doing, is that the work that Click formerly was doing?

"A. Yes."

"Q. And the 20 per cent tree-setting and seeding, is that work Click was doing?"

"A. Yes."

Henry L. Meinert, who testified at page 44 of the depositions, esti-

mated that the new man devoted thirty per cent of his time to the duties of a mason and approximately seventy per cent of his time to the duties performed formerly by Click.

It is well settled, of course, that where a job is abolished and the services of one under civil service law protection are terminated, the abolition must be done in good faith and not merely to separate an employee from his job.

So far as economy is concerned we note that under the provisions of §143.09 R. C., prior to its amendment effective September 13, 1957, both plumbers and masons, being classifications Nos. 8110 and 8120 respectively, were in the same pay range and hence entitled to the same pay except for the difference in steps, which may have resulted from relator's longevity.

In the case of **The State, ex rel. Miller, v. Witter, Director of Department of Industrial Relations, 114 Oh St 122**, there was an attempt made to oust the relator who held the title of branch office manager of the Department of Industrial Relations, of Dayton, Ohio, in favor of another employee who was given the new title acting deputy in charge. The Ohio Supreme Court restored the relator to his job and at page 125 of the opinion wrote as follows:

"The whole record sustains the claim that what was really done was to readjust the salaries covering the Dayton branch—leaving the office intact, but its incumbent dismissed—and to displace the incumbent for another, who, while assuming to act as deputy, actually performed the same duties as had been previously performed by the relator, and none other.

"We are of the opinion that, under the facts disclosed by the record, there was no abolishment of the office. A peremptory writ of mandamus will therefore issue as prayed for."

As before stated where such a job abolishment is undertaken it must be in good faith and not a mere subterfuge. Further, the actual duties rather than the mere title will be looked to to determine the bona fides of such job abolishment. In the case of the **State, ex rel. Hubbard v. Hilty, 31 Abs 538**, branches seven and eight of the syllabus are as follows:

"7. The abolition of a position to meet economic and financial requirements must not be predicated on mere subterfuge."

"8. The test of subterfuge in abolishment of a position is: if another is employed to perform substantially identical service, either under the same or a different title, the purported abolishment is a subterfuge; if another is not so employed, the position has been legally abolished and it is not a subterfuge."

As earlier pointed out, the evidence before the court is in the form of a deposition containing the testimony of relator for two other witnesses called by him. No witnesses were called on behalf of Acting Highway Director Thormyer or the two members of the State Civil Service Commission. Click testified that he was asked to resign, that no question was raised as to his good behavior or his efficient service nor was anything said to him with respect to the matter of economy.

As pointed out above there is no economy in firing a plumber and

hiring a mason, all things else being equal, for the simple reason that both are paid the same amount as starting pay. There was, of course, some testimony in the record about some persons who had been classified as masons who had resigned.

Most damaging to the position of the respondents was the testimony of Click that a person identified as Lloyd Martin, said to be either administrative assistant to the division enginer or personnel man of Division No. 9, had called Click to his office and summarily demanded his resignation. When Click refused and asked for the reason, he was told, according to Click, that others wanted his job. It is admitted that Click was holding a civil service job. The reason claimed to have been given by Martin appears to be borne out by the events which followed.

Civil service is founded upon **Article XV, Sec. 10, Ohio Constitution,** adopted in 1912 which provides as follows:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

This has been implemented by the enactment of nearly fifty sections of law on the subject including §143.27 **R. C.,** dealing with the tenure of public employees in the classified service and guaranteeing that such tenure shall be undisturbed during good behavior and efficient service. This section provides in part as follows:

"The tenure of every officer or employee in the classified service of the state and the counties, cities, and city school districts thereof, holding a position under §§143.01 to 143.48, inclusive, **R. C., shall be during good behavior and efficient service;** but any such officer or employee may be removed for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office." (Emphasis added.)

See also §143.03 **R. C.,** requiring the appointments and layoffs to be in accordance with the provisions of the Civil Service Law.

We have searched the record carefully and find nowhere any denial or challenge to the accuracy of Click's report on the interview he had with Martin. If there were any inaccuracies in Click's description of what happened it would have been a simple matter to put Mr. Martin on the stand.

Click testified further that from personal observation Willard Graham was performing the identical duties Click had performed previously even to occupying the identical seat in a truck in which Click formerly rode when performing his duties. The other two witnesses estimated that seventy per cent of the duties performed by Graham were those which formerly had been performed by Click.

In light of the foregoing only one conclusion is possible, namely, that no economy was intended to be effected, nor in fact was effected, that the job abolishment was not for the purpose of efficiency, economy, lack of funds or lack of work but merely as a means to separate illegally

Click from the state payroll and provide an opening for the appointment of another. The said abolishment, therefore, being unauthorized, never in fact was effective and the relator is entitled to a writ of mandamus restoring him to his former position in the Department of Highways, State of Ohio, Division No. 9, Roadside Improvements, Maintenance and Repairs, as a plumber effective from and after the date of his illegal separation therefrom to wit, July 10, 1957, and respondent, George J. Thormyer, Acting Director of the Department of Highways, is ordered to prepare or cause to be prepared the necessary and proper pay rolls and all other papers incident thereto and the respondents, Carl W. Smith and Leland S. Dougan, as members of the State Civil Service Commission, are further ordered to take steps necessary and proper to make this order effective.

PETREE, PJ, MILLER, J, concur.