THE STATE, EX REL. JONES, APPELLANT, *v.* PRESTON, DIRECTOR OF HIGHWAYS, ET AL., APPELLEES.*

(No. 6670—Decided February 20, 1962.)

*Mr. William A. Carroll,* for appellant.

*Mr. Mark McElroy,* attorney general, *Mr. V. S. Krupman* and *Mr. Walter M. Shea,* for appellees.

*Appeal settled and dismissed by agreement of parties (37558), February 13, 1963.

BRYANT, J. This is an appeal on questions of law. Orville D. Jones of Marietta, Ohio, who, until temporarily laid off on March 14, 1959, was the storekeeper of the Department of Highways Division 10 Warehouse in Marietta, is relator, appellant herein. Everett S. Preston, as Director of the Department of Highways of Ohio, and James T. Welch, as Director of the Department of State Personnel, are respondents, appellees herein.

Jones filed a petition for writ of mandamus in the Court of Common Pleas of Franklin County, claiming his temporary lay-off was illegal and for political purposes and asking that his removal be set aside and that he be restored to his former position effective as of the date of his lay-off.

In the court below, a demurrer was filed on behalf of the two state officials, which was overruled. An answer was then filed admitting that Jones had been duly appointed as division storekeeper in the classified civil service of the state, but denying that he had been unlawfully discharged or that there was any failure to comply with the civil service law in laying off Jones.

The petition alleges that Preston, on March 14, 1959, sent a letter to Jones stating that "due to lack of work, you are being temporarily laid off" from the position of Storekeeper II to which Jones had been appointed in February 1958 and which he held until his lay-off took place on March 14, 1959. From the record it appears that Jones had worked for the Department of Highways for ten or twelve years prior to 1958, but in other capacities. The matter came on for hearing in the court below after which a decision in favor of the respondents was announced. Jones gave notice of appeal to this court, and in his brief has assigned four errors as follows:

"I. All of the duties of the job pertaining to the classification held by the appellant are being performed by an individual in another unrelated and separate classification.

"II. The duties performed by the present incumbent are in fact and on the evidence not ancillary or incidental to his duties as an equipment operator III or IV.

"III. The present incumbent is, in fact, performing and has performed none of the duties of the position to which he is or has been classified, that is, of an equipment operator III or IV.

"IV. The evidence establishes, circumstantially and inferentially, that the so called merger or consolidation of the positions was motivated by considerations other than economy and the good of the service."

On behalf of Jones it is argued that he was holding a full-time job; that no complaint had been made as to his work; that he was summarily taken off the job which, ever since that time, has been performed by another; that the laying off was in fact a removal and was done without complying with the civil service laws; and that in fact there was no lack of work, but the removal was motivated by political considerations.

On behalf of the respondents it is argued that there was insufficient work for the number of employees in the warehouse, that the position of storekeeper formerly held by Jones has been consolidated with the position of equipment operator held by Paúl Joseph Huck and that Huck now performs the work required of both.

It was also argued on behalf of respondents that the position of storekeeper in Division 10 is one of small consequence and only a part-time job. Relator's Exhibit R is a memorandum dated April 30, 1959, from Dana R. Devol, Personnel Officer for Division 10 of the Department of Highways, to Robert E. Wallace, then secretary to the Director of the Department of Highways. This memorandum was written seven weeks after Jones was laid off. It tells of the duties performed by Huck, Equipment Operator III, and a laborer. Devol stated that Huck put in six hours each day in "work in yard such as operating crane, operating trucks, moving heavy materials, loading and unloading materials and other related duties." He further stated that only one hour a day was required "in barn receiving and issueing [issuing] small tools, equipment and supplies for and too [to] the various counties." The remaining one hour was divided—one-half hour being used "recording on the proper forms and in the proper books all transactions that transpire in and thru the Division Warehouse and Yard," and the remaining half-hour for related duties.

As we understand Devol's testimony, the duties of a storekeeper are being carried on by the use of either one-half hour or at the most one and one-half hours a day of Huck's time. Devol's letter concludes "there can be no justification for the

classification for a Storekeeper II at the Division Warehouse, Division 10, * * *.''

Jones in his testimony painted a vastly different picture, stating that he devoted eight hours a day to the job of storekeeper and occasionally stayed one-half hour beyond quitting time to finish a job of unloading. He stated the warehouse inventory consisted of ''between 700 and 1200 items over there'' and that the warehouse building is ''50 feet wide, probably 110 feet long, and it is filled with material aside from what is contained in the yard, * * *.''

Jones' contentions are given support by his Exhibit F which is the inventory of the Division 10 Warehouse as of December 31, 1958, approximately two and one-half months prior to the date Jones was temporarily laid off. This inventory is limited to ''Regular M & R Material'' and is spread over fifteen pages, listing the various items in the warehouse. The inventory discloses the quantity, description, unit price and the total price for each of the items found in the warehouse. The total value of the items there listed is $103,865.85 and the total number of items is 123,805. It is this warehouse for which detailed records are kept of each incoming shipment and each outgoing quantity.

As we view the record, there appears to be one question which requires our attention first, and that is whether Jones was separated from his position in a manner which complied with the civil service laws of this state. As we understand it, the survey and preliminary steps which brought about the temporary lay-off of Jones had for their purpose a study of jobs and positions which could be abolished or consolidated without harm to the service required of the division.

There appears to be no controversy in the record that the intended purpose was to consolidate the positions held by Jones and Huck, dispensing with the service of Jones and entrusting those duties to Huck. The job description for Equipment Operator III prepared by the Civil Service Commission, predecessor of the State Department of Personnel, required a chauffeur's license and sets out the nature of the work in the following terminology:

''This is operation and maintenance of heavy motor equipment customarily employed on highway or other public work construction and maintenance activities,

"An employee in this class operates equipment powered by internal combustion engines such as: trucks, caterpillar tractors, patrol graders, road rollers, and specialized heavy duty snow plows on construction, reconstruction, grading, landscaping and similar projects. * * *"

Operation of a patrol grader, road roller, trucks hauling equipment, distributor applying oils, asphalts or tar to the roads and heavy duty snow removal apparatus are some of the examples of the work of an Equipment Operator III. It is of course nowhere contended that Huck, in his duties in and about the warehouse either immediately prior to March 15, 1959, or since that time, has engaged in the operation of heavy motor equipment directly engaged in the construction or repair of highways.

At the time Jones was temporarily laid off he was serving in Classification 1311 as Storekeeper II, Pay Range 23. The job description of Storekeeper II reads in part as follows:

"This is responsible supervisory storekeeping in a large central storeroom or commissary management of comparable responsibility.

"An employee in this class is responsible for the receipt, storage and distribution of a large and varied stock of stores items. This class may be differentiated from others in the same series by reason of the increased volume and variety of supplies handled and the greater responsibility and independence of action. Work frequently involves special problems concerning storage or shipment of valuable or perishable stock and supervising the keeping of important inventories and other store records used as a control for purchasing or other management purposes. Employee normally exercises technical supervision over moderately large groups of regular employees or inmate helpers in handling stock and keeping fairly complex records. Although employee works with considerable independence in determining work methods and procedures, work is reviewed for efficient storeroom operation through supervisory inspection and accounting controls."

At the time Huck took over the duties as storekeeper, formerly performed by Jones, he was serving in Classification 8012, Equipment Operator III, Pay Range 20. Both these classifications, positions and pay ranges are authorized in Section 143.09 of the Revised Code.

From our examination of the record in this case it seems clear that at the time Jones was notified of his so-called temporary lay-off, Huck was placed in charge of the warehouse, assumed the entire responsibility of operating it and there was no intention then or thereafter to return Jones to that position. But if there should be any doubt of that, the correspondence which took place shortly thereafter makes it clear that there was no intention either to rehire Jones or to hire anyone in his place.

In relator's Exhibit Q, a memorandum of March 27, 1959, from Devol to the central office of the Department of Highways, there appears the following statement with reference to the temporary lay-off of Jones:

"* * * I wish to emphasize that this has merely been a consolidation of positions in accordance with the orders received by me from the Division Engineer *to eliminate and consolidate where possible within the department.*" (Emphasis added.)

Thus it appears that the notice received by Jones, "that due to lack of work, you are being temporarily laid off," was not in fact a temporary lay-off at all but, as contended in the petition of relator, was "in fact a removal or attempt to remove relator without compliance with the civil service laws * * *."

Section 143.27 of the Revised Code provides in part as follows:

"The tenure of every officer or employee in the classified service of the state * * * holding a position under Sections 143.01 to 143.08, inclusive, of the Revised Code, shall be during good behavior and efficient service * * *."

This is followed by express provision for removal for cause such as incompetency, inefficiency, dishonesty, drunkenness, and other grounds not here relevant. Section 143.27, *supra,* then continues as follows:

"In all cases of removal, the appointing authority shall furnish such employee with a copy of the order of removal and his reasons for the same, and give such officer or employee a reasonable time in which to make and file an explanation. Such order with the explanation, if any, of the employee shall be filed with the commission. Any such employee so removed may appeal from the order of such appointing authority to the state civil service commission * * * within ten days after the date of

such removal, in which event the commission * * * may affirm, disaffirm, or modify the judgment of the appointing authority, and the commission's decision is final. * * *;''

It has further been held that an employee in the classified service may only be removed in compliance with the statutory provisions relating to the civil service of the state. In *State, ex rel. Bay*, v. *Witter, Dir.* (1924), 110 Ohio St., 216, at page 221, the Supreme Court in a *per curiam* opinion wrote as follows:

''It is well established in this state that an employe in the classified service can only be suspended or removed in accordance with the provisions of the Civil Service Act. *City of Steubenville* v. *Bougher*, 10 Ohio App., 178; *Hornberger, Dir. of Public Service*, v. *State, ex rel. Fischer*, 95 Ohio St., 148, 116 N. E., 28; *State, ex rel. Brittain*, v. *Board of Agriculture of Ohio*, 95 Ohio St., 276, 116 N. E., 459.

''In order to suspend an employe in the classified service, the appointing power must do the following things:

'' (a) Serve upon the employe a written order of removal or suspension containing one or more of the statutory grounds for the same, together with such specification of facts as will enable the employe to make an explanation.

'' (b) Give the employe a reasonable time within which to make and file an explanation.

'' (c) File with the civil service commission a copy of such order of removal or suspension.''

Where an employee is removed from his position upon the ground that the job is abolished, there must be in fact a job abolishment, otherwise the employee is entitled to the position. In the case of the *State, ex rel. Miller*, v. *Witter, Dir.* (1926), 114 Ohio St., 122, at page 124, the Supreme Court in a *per curiam* opinion said:

'' * * * If the office was in fact abolished, we have no doubt that the purpose of effecting economies would justify such an act. However, such an officer, being under the protection of the civil service, may not be removed under the guise of abolishing his office. * * * The whole record sustains the claim that what was really done was to readjust the salaries covering the Dayton branch—leaving the office intact, but its incumbent dismissed—and to displace the incumbent for another, who, while assuming to act as deputy, actually performed the same duties

as had been previously performed by the relator, and none other.''

In this case it seems clear that the entire plan was to consolidate positions not on a temporary basis but on a permanent basis. It further seems clear that every step which was needed or required to remove Jones from his job forever and to place Huck in charge for an indefinite period in the future was taken at the time of Jones' removal on March 14, 1959. There are numerous differences between a temporary lay-off and a removal. Where the action of the appointing authority is to remove an employee, that employee, if dissatisfied, has at that time a right during the ten days which follow to appeal to the Civil Service Commission. On the other hand, where the employee is separated from his position as a temporary lay-off, there is no such appeal. In the case of *Curtis, Safety Dir.*, v. *State, ex rel. Morgan* (1923), 108 Ohio St., 292, the second and third paragraphs of the syllabus are as follows:

''2. No appeal lies from the action of the appointing authority, except in cases of removal on the grounds set forth in Section 486-17*a*, General Code.

''3. In all cases of temporary lay-off or suspension of a municipal employe in the classified service, such suspended or laid-off employe retains title to the office or position, and is entitled to be reinstated therein, upon the same again being refilled, in preference to all persons.''

The testimony given by Huck in a deposition taken on April 20, 1960, indicates clearly that neither immediately before nor at any time after March 15, 1959, was he engaged in the operation of motor propelled vehicles or equipment which was engaged in the construction or repair of highways. It is perfectly clear that prior to the dismissal of Jones, Huck was assistant storekeeper and occasionally operated a power lift in connection with loading or unloading operations. Huck stated (in his deposition), when asked what his duties consisted of on April 20, 1960:

''Oh—load things up out in the yard, unload—just whatever there is to load and unload.''

He stated that he performed duties in connection with the warehouse; counted goods when received; signed receiving

tickets when goods were received; kept an inventory of goods and materials on hand in the warehouse; supervised the labor or laborers assigned to the warehouse; supervised the issuance and delivery of items from the warehouse for use in various parts of the division; and, when necessary, used numerous other forms in connection with the warehouse.

It is of course possible to consolidate positions in the interest of economy, particularly when it is done in good faith. However, it would appear to be more difficult to consolidate the position of Huck as he was carried on the pay roll, namely, equipment operator, but which he at no time performed, with that of Jones, as storekeeper. However, that question need not be decided, for it is quite clear that the purpose intended to be effected was a permanent separation of Jones and either an abolishment of his position or a consolidation of that position with that of Huck.

As already observed, every step was taken on or before March 15, 1959, which was necessary totally and completely to separate Jones from the state pay roll and totally and completely to assign his duties to Huck. It was mandatory that he be given written notice that he was being removed.

There is some evidence in the record indicating that there was a brief period from four to six weeks during which the consolidation was under observation to determine whether it was successful. But it is quite clear that by April 30, 1959, it was officially considered that the consolidation was satisfactory to the department and no return to the original plan of operation was contemplated. Be this as it may, neither on March 15, 1959, April 30, 1959, nor at any time subsequent thereto, did Jones ever receive any notice that his job was abolished or consolidated and, what is more important, that he was being removed permanently from future pay rolls.

This, therefore, is a clear failure to comply with the mandatory provisions of Section 143.27 of the Revised Code requiring the appointing authority to furnish Jones with a copy of the order of removal. This being a mandatory requirement, it follows that there was a failure to comply with the provisions of law in connection with his removal, entitling Jones to the writ of mandamus prayed for.

304

The judgment of the court below must be, and hereby is, reversed and the cause remanded for further proceedings in accordance with law.

*Judgment reversed.*

DUFFEY, P. J., concurs.

DUFFY, J., dissenting. While I agree that an employee in the classified service may only be laid off or removed in compliance with the statutory provisions relating to civil service of the state, I do not feel that the facts in this case show a clear right entitling the relator, Orville D. Jones, to a writ of mandamus. There is no showing that any new employee has ever been hired to replace Jones after he was laid off; and while Huck, who appears to have been the oldest employee in the section, is doing the work that Jones formerly did, and while he might have been improperly classified, there is evidence in the file from which the trial judge could conclude that he was doing all his former work and, in addition, that he was doing the work which Jones formerly did.

I would distinguish this case from the case of *State, ex rel. Click,* v. *Thormyer, Acting Dir.,* 105 Ohio App., 479, which was previously decided by this court, on the difference in the factual situations existing between the two cases. In the *Click case* there was an employee hired, after the removal of Click, who took over and performed the work that Click formerly did, and there was no evidence of any absorption of his job by another employee, as we have in this case. For that reason I do not feel that the relator has shown a clear right to a writ of mandamus.