[This opinion has been published in *Ohio Official Reports* at 70 Ohio St.3d 196.]

THE STATE EX REL. GILLIVAN *v.* OHIO BOARD OF TAX APPEALS ET AL.

[Cite as *State ex rel. Gillivan v. Bd. of Tax Appeals*, 1994-Ohio-510.]

*Mandamus to compel Board of Tax Appeals to reinstate employee and payment of back wages—Writ denied when adequate remedy by way of appeal exists.*

(No. 92-1976—Submitted May 25, 1994—Decided September 7, 1994.)

IN MANDAMUS.

_____

{¶ 1} Relator, John Gillivan, seeks a writ of mandamus directed against respondents, Ohio Board of Tax Appeals ("BTA") and Stephen Perry, Director of the Ohio Department of Administrative Services ("DAS"), to compel (1) Gillivan's reinstatement to the allegedly classified civil service position he formerly held at BTA, and (2) back pay.

{¶ 2} Gillivan was formerly employed by BTA as an Administrative Assistant 4, which he claims was a classified position. In July 1991, Perry advised Gillivan by letter that his position had been "erroneously listed in the classified service" and had been changed to unclassified. In August 1991, Gillivan was discharged without notice or hearing. He timely appealed his discharge to the State Personnel Board of Review ("SPBR"). Before a decision issued in his appeal, Gillivan filed the instant action in this court.

{¶ 3} SPBR has since issued its decision, finding that Gillivan was not performing duties in the classified service when he was discharged and dismissing his appeal for lack of jurisdiction. SPBR determined that Gillivan had served in a fiduciary relationship to principal executive officers and was thus exempt from the classified service under R.C. 124.11(A)(9). Gillivan appealed SPBR's decision to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. The appeal,

captioned *Gillivan v. Ohio Bd. of Tax Appeals*, case No. 93CVH-01-683, is apparently still pending.

{¶ 4} SPBR adopted the report of its administrative law judge ("ALJ"), in which he found the following facts:

"1. Appellant John Gillivan was initially hired as a part-time employee by the Appellee Board of Tax Appeals in 1989 in an unclassified position. On April 9, 1990, he was hired by the Board as a full-time employee. On April 30, 1990, he was promoted to an Administrative Assistant 4 position at an hourly rate approximately twice as high as his original hourly rate.

"2. Mr. Gillivan's status was changed, at the request of the Board, in January, 1991, to the classified service.

"3. In July, 1991, Mr. Gillivan's status was again changed, at the request of the Board[,] to the unclassified status [*sic*, service].

"4. Mr. Gillivan was the sole person responsible to the Board and Executive Secretary for the design, implementation, analysis, and reporting of the County Auditor Liaison Program, or inter-governmental liaison program proposed by the Board of Tax Appeals.

"5. Mr. Gillivan was responsible as the contact person with the Office of Budget and Management and the Legislative Budget Office for the preparation and development of the budget of the Board of Tax Appeals, following the decision by the Board as to which direction they wished to go both policy-wise and budget-wise.

"6. Mr. Gillivan served as one of two contact persons for the on-site auditor during the audit of the Board conducted by the State Auditor.

"7. Mr. Gillivan was removed, without an R.C. 124.34 Order, by written notice received August 7, 1991, and effective August 24, 1991."

{¶ 5} The ALJ also provided a comprehensive summary of the testimony and exhibits submitted during the three-day hearing regarding Gillivan's discharge.

Most of the ALJ's findings of fact are substantiated by evidence in this record, including:

1. Randall W. Sweeney, who is presently BTA's vice-chairman and formerly its chairman, testified that Gillivan was originally hired in 1989 as a part-time unclassified employee to orchestrate BTA's move from one floor to another in the Rhodes Tower. In April 1990, BTA hired Gillivan as a full-time Administrative Assistant 2 in the unclassified service. Effective May 7, 1990, Gillivan was promoted to Administrative Assistant 4 and, in January 1991, he was placed as a provisional employee in the classified service.

2. Sue Pohler, BTA's executive director and Gillivan's superior since May 1991, testified that Gillivan's duties included visiting county auditors pursuant to the "Inter-governmental Liaison Program." This program was intended to identify and solve problems associated with processing property tax valuation cases, and Gillivan was the only BTA employee involved. Gillivan was also intimately involved with preparing BTA's proposed budget in accordance with its policy and budgetary decisions. Moreover, Pohler testified that Gillivan was the primary source of information and a principal contact during an audit of the board's budget conducted in the first half of 1991. Kiehner Johnson, chairman of BTA since March 1991, confirmed this testimony.

3. Sweeney and Gillivan agreed that Gillivan performed as the liaison to county auditors, handled preparation of the budget, and responded to inquiries during the audit; they disagreed with Pohler's assessment of his authority. Gillivan did not say that these projects were recently assigned by a new administration or that they were not part of his regular duties.

4. Pohler believed that since Gillivan was involved in confidential and, in effect, high-profile projects, he was serving in a fiduciary capacity to the board and had been placed in the classified service erroneously. In July 1991, she asked DAS to review Gillivan's position. DAS advised Gillivan of his unclassified status in

July 1991. According to Pohler, Gillivan was discharged from BTA's employ on August 7, 1991 pursuant to an "unclassified removal," *i.e.*, without the protections afforded by R.C. 124.34.

{¶ 6} In addition to challenging the exclusion by the ALJ of evidence of claimed political motivation as irrelevant and inadmissible, Gillivan protests the personnel action forms that returned the Administrative Assistant 4 position to the unclassified service and documented his removal, charging that neither was completed or approved until after his discharge. The personnel action form changing his position to unclassified, in particular, purports to have retroactive effect to the date the Administrative Assistant 4 position became classified.

–––––––––––––––––

*Michael A. Moses*, for relator.

*Lee Fisher*, Attorney General, *Elizabeth J. Birch* and *Laurel D. Blum*, Assistant Attorneys General, for respondents.

–––––––––––––––––

**Per Curiam.**

{¶ 7} "The writ of mandamus must not be issued when there is a plain and adequate remedy in the ordinary course of the law," R.C. 2731.05, and Gillivan attempts to establish this in his fourth proposition of law. In response, Perry and BTA rely on *State ex rel. Weiss v. Indus. Comm.* (1992), 65 Ohio St.3d 470, 605 N.E.2d 37, to argue that Gillivan has an adequate remedy and, therefore, cannot show a condition necessary for the writ to issue. We find *Weiss* dispositive and, therefore, do not reach Gillivan's remaining arguments.

{¶ 8} In *Weiss*, an allegedly classified civil servant sought a writ of mandamus to compel her reinstatement and back pay. She had appealed several separate, but essentially contemporaneous, job actions to the State Personnel Board of Review ("SPBR"), including a change of her formerly classified status to unclassified, a reduction of her job duties, and her discharge. The employee's

"declassification," like Gillivan's, was purportedly accomplished pursuant to R.C. 124.11(A)(9) (employees in fiduciary positions exempt from classified service).

{¶ 9} SPBR singled out the declassification appeal in *Weiss* for dismissal, finding that it had no jurisdiction to determine classified status by declaratory judgment. 63 Ohio St.3d at 471-472, 605 N.E.2d at 38. SPBR then stayed consideration of the reduction of duties and discharge claims pending appeal of the dismissal. *Id.* at 472, 605 N.E.2d at 38. At the same time, however, SPBR acknowledged its jurisdiction to determine classified status in connection with adverse job actions. *Id.* at 471, 605 N.E.2d at 38. This conclusion follows *Rarick v. Geauga Cty. Bd. of Commrs.* (1980), 63 Ohio St.2d 34, 36, 17 O.O.3d 21, 22, 406 N.E.2d 1101, 1103, and *Yarosh v. Becane* (1980), 63 Ohio St.2d 5, 17 O.O.3d 3, 406 N.E.2d 1355, paragraph two of the syllabus, which held:

"The State Personnel Board of Review has jurisdiction over appeals from removals of public employees if it determines that such employees are in the classified service, regardless of how they have been designated by their appointing authorities."

{¶ 10} Although the employee in *Weiss* had already appealed SPBR's jurisdictional ruling pursuant R.C. 119.12, she essentially argued that appeal was inadequate because SPBR had no jurisdiction over declassifications not accompanied by adverse job actions. We suggested that SPBR might have consolidated the *Weiss* employee's claims in accordance with its conceded jurisdiction. *Weiss*, *supra*, at 474, 605 N.E.2d at 40. However, since SPBR jurisdiction was reviewable on appeal, the court held that an available and adequate remedy precluded a writ of mandamus. Thus, *Weiss* stands for the principle that an appeal is not inadequate just because it involves a jurisdictional dispute.

{¶ 11} Gillivan is also an allegedly classified public employee who appealed his discharge following declassification to SPBR and then to common pleas court. Although *Weiss* holds that mandamus cannot be used as a substitute

for this administrative appeal procedure, Gillivan claims appeal is inadequate because it is too time-consuming and expensive to pursue. This argument is generally insufficient to justify a writ of mandamus. *State ex rel. Willis v. Sheboy* (1983), 6 Ohio St.3d 167, 6 OBR 225, 451 N.E.2d 1200, paragraph one of the syllabus, holds:

"Where a constitutional process of appeal has been legislatively provided, the sole fact that pursuing such process would encompass more delay and inconvenience than seeking a writ of mandamus is insufficient to prevent the process from constituting a plain and adequate remedy in the ordinary course of the law. (*State ex rel. Kronenberger-Fodor Co. v. Parma* [1973], 34 Ohio St.2d 222 [63 O.O.2d 362, 297 N.E.2d 525], syllabus approved and followed." Accord *State ex rel. Casey Outdoor Advertising, Inc. v. Ohio Dept. of Transp.* (1991), 61 Ohio St.3d 429, 432, 575 N.E.2d 181, 184.

{¶ 12} Gillivan also claims that appeal is inadequate because it provides no opportunity to contest the bad faith with which he contends his discharge was accomplished. He complains that SPBR's ALJ considered just one issue—whether Gillivan performed duties characteristic of the classified or unclassified service during the year or so that preceded his discharge. Gillivan maintains that evidence of political motivation is also relevant and that the ALJ excluded such evidence erroneously.

{¶ 13} Gillivan relies on *Swepston v. Bd. of Tax Appeals* (1993), 89 Ohio App.3d 629, 626 N.E.2d 1006, motion to certify overruled (1993), 68 Ohio St.3d 1410, 623 N.E.2d 567, which recognized that bad faith or political motivation has relevance in job abolishment claims. In *Swepston*, the Court of Appeals for Franklin County reversed SPBR's affirmation of the job abolishment BTA imposed on a Fiscal Officer 2, who was formerly under Gillivan's supervision. There, however, the court relied on Ohio Adm. Code 124-7-01(A), under which job abolishments and layoffs may be disaffirmed if bad faith is shown. *Id.* at 635, 62

N.E.2d at 1010. Gillivan cites no similar provision that applies to discharges, such as his allegedly from the classified service. Moreover, if evidence of bad faith and political motivation was excluded erroneously, we see no reason why the error is not reviewable on appeal, which appeal Weiss holds is an adequate remedy.

{¶ 14} Most of Gillivan's other authority is distinguished in *Weiss*. For example, he cites *State ex rel. Miller v. Witter* (1926), 114 Ohio St. 122, 150 N.E. 431, *Toledo v. Osborn* (1926), 23 Ohio App. 62, 155 N.E. 250, and *State ex rel. Click v. Thormyer* (1958), 105 Ohio App. 479, 6 O.O.2d 220, 151 N.E.2d 246, to show that mandamus is a means by which a public employee may recover a classified position. No adequate remedy was available in those cases because the contested job actions—abolishments—were not even arguably appealable under the civil service laws. In contrast, authority for SPBR to hear the *Weiss* employee's claim—the essence of which was her discharge from a position her employer considered unclassified—was established in *Rarick*, *supra*, and the syllabus of *Yarosh*, *supra*. *Weiss*, 65 Ohio St.3d at 474-475, 605 N.E.2d at 40-41. Similarly, Gillivan's complaint here is that he was removed from a position BTA had designated as unclassified, again a job action that *Rarick* and *Yarosh* permit the SPBR to hear.

{¶ 15} Accordingly, the writ of mandamus is denied due to the availability of appeal.

*Writ denied.*

FARMER, NAHRA, CLOSE, FORD and PFEIFER, JJ., concur.

RESNICK, Acting C.J., and F.E. SWEENEY, J., dissent.

SHEILA G. FARMER, J., of the Fifth Appellate District, sitting for MOYER, C.J.

JOSEPH J. NAHRA, J., of the Eighth Appellate District, sitting for A.W. SWEENEY, J.

MICHAEL L. CLOSE, J., of the Tenth Appellate District, sitting for DOUGLAS, J.

DONALD R. FORD, J., of the Eleventh Appellate District, sitting for WRIGHT, J.

————————————

**FRANCIS E. SWEENEY, SR., J., dissenting.**

{¶ 16} I would grant relator's request for a writ of mandamus for the reasons stated in Justice Resnick's dissenting opinion in *State ex rel. Weiss v. Indus. Comm.* (1992), 65 Ohio St.3d 470, 477, 605 N.E.2d 37, 42. Because relator is challenging only his removal from the classified service and the issue of back pay, R.C. 124.03(A) confers no jurisdiction on the State Personnel Board of Review to rule on the matter. Therefore, relator does not have an adequate remedy at law by way of appeal. Mandamus is his only remedy. Moreover, because relator has set forth facts to establish that he is entitled to respondents' performance of a clear legal duty, the writ of mandamus should issue.

RESNICK, Acting C.J., concurs in the foregoing dissenting opinion.

————————————